And we will go on to the second case. Thank you. We'll wait till everyone is settled. Okay. All right. The second case of the day is 22, Appeal 22-2801, Michael Mogan v. City of Chicago. Good morning, Mr. Mogan. Good morning, Justices and colleagues at the City of Chicago. Thank you. I must just tell you that we aren't justices, we are judges. Yeah. Thank you, though, for, you know, for trying to make us into justices. Fair enough. This is actually the first time I've been inside a courtroom after about 75 straight hearings on Zoom, so I'm glad to be here in your courtroom. Again, so I'm Michael Mogan. I'm actually an attorney and appellant, but technically I'm pro se. I honestly believe I'm in your courtroom because the City of Chicago does not have a zoning ordinance, and so what they've essentially did is enacted a shared housing ordinance, and the difference between this case and anything I think that's ever happened when that ordinance was successfully held constitutionally. Could you speak directly into the mic? Sure, sure. Thank you. Okay, so I own my condominium back in since 2004. The ordinance was enacted in 2016, and so I don't think there's any question that I had essentially a right property interest, and the bylaws in my condominium permit short-term rentals. They permit monthly rentals. They permit annual rentals. I literally face a $2,500 day of fine. It can be higher. It could be lower. I don't want to misquote the ordinance, but in a very short time I won't have any equity. This is a partial taking case. I'd like to address the inverse condemnation claim as well because they overlap, but I don't think Mr. Mogan, let me start you out. Do you concede that the actual language of the declaration states that no unit shall be leased or subleased for a period of less than 30 days or for a period of more than 30 days where hotel services normally furnished by a hotel such as room service and the specific language, Judge? Well then, doesn't that plain language clearly set forth two categories of prohibited leases? One for all leases of less than 30 days and another for leases of more than 30 days in which hotel services are provided, and if not read in that manner, what distinction is the language making, do you think, between leases of less than 30 days and those of more than 30 days? So I think the definition of a hotel service, which is something more appropriate for discovery for summary judgment perhaps in the hearing, I think if I don't offer hotel-like services, if I don't have room service, if I don't have security at the front door, if I don't have wake-up calls, etc., and so I just think that's a question of fact. The bylaws that you're reading are actually in excess of 20 years old, so I don't think they could have ever taken into account what's developed with short-term rentals. But look, if we read the declaration language as prohibiting all leases of less than 30 days, doesn't that defeat your claims against the city? Because you would have been on notice before purchasing the unit that leases or sub-leases less than 30 days were not allowed. I mean, I'm trying to figure out how you could have had a reasonable expectation of investment income from short-term rentals if the declaration prohibits them. I just want to reiterate what you have in a hotel versus me renting my condo on a daily, monthly, or even annual basis. The latter two, which I've done, the first one I've actually done two before I didn't want to get any hot water, and the difference between... You didn't want to what? I'm sorry. I didn't want to face an inordinate amount of fines, so I filed the lawsuit, specifically the declaratory judgment claim, to make sure I was able to. So that's why I filed the complaint. Let me ask a corollary. It's very clear you read the declaration one way, the city reads it another way. Do you know of anything from your perspective that bars us from just determining what we think the declaration says, and therefore making our own determination about whether that impacts your standing? I think that's where the declaratory judgment claim comes in. I'm afraid I'm not hearing your words. Maybe just a wee bit louder. Sure. I'm sorry. Part of it is technical, but go ahead. Yes, I believe the court should read the bylaws, and essentially determine, could I do a daily, monthly, annually? The latter two, which no one seems to be disputing, and I think what does come into play, which I think is more a question of fact, is what makes me running my condo differently than a Hyatt or a Marriott? And I do think that's significant. If me just handing someone over the keys and having fresh linens is not clearly different than someone with a Hyatt, I'm offering room service, chef meals at 24 hours of the day. There's nothing in the complaint where I could see that I would do something like that, and so I think that's something more appropriate for essentially a trial and discovery. Okay. I think I hear you to be saying, there's nothing preventing us from reading what we think the declaration says, whether it means it's what you say it is, or whether it means what the city says it is. Yes, I think that comes into, that's exactly what I'm asking for the declaratory judgment claim, where I'm not seeking any monetary remedies, but to the point of hotel-like services are forbidden, etc., I don't think in that regard, you can just look at the bylaws. Let me ask it in a different way. What is your injury? What is the injury that the city caused? That wasn't already in place by the declaration. Okay, so when I amended the complaint, I put a specific dollar amount that I could rent the unit for $3,200 a month versus $1,600, and I know when I file a notice of appeal, the record gets closed, but since I've been prohibited from doing it, that's become an astronomical amount, especially in this economy, and honestly, it was a little light. So is it your argument that the injury is caused by the ordinance or by the declaration? The property manager signed an affidavit, which was not true, I believe. I'm not saying I did in bad faith, and then the city put the building on the prohibited building list. Can I stop you there? Sure. Because my reading of ordinance and these regulations and how this regime works is that your building asked the city to be put on the prohibited buildings list. So doesn't that mean, to pick up on Judge Pryor's question, that your building has caused the injury and not the city of Chicago? Why or why not? No, I mean, when I serve them the complaint, I actually have a copy of the bylaws. I don't think they can essentially just... Look, the ordinance imposes fines, right? But it does not impose the restriction on short-term rentals. That is imposed by your homeowners association. So essentially, doesn't the ordinance merely provide homeowners associations with the means of enforcing their decisions regarding short-term rentals? I mean, how could that be a takings clause violation when the city makes no decisions at all as to whether short-term rentals are allowed, but only supports the various homeowners associations determinations? Well, I mean, it's the city that's enforcing it. So when I filed the complaint, the city didn't take me off the list. The city is the one fighting me, you know, all through this process. The HOA, I agree, it should be a private issue. But once my name is on the list and they refuse to remove it, that's where the taking is. Is it the building that's on the list? Yes, anything at that address. We have the records, but there's 140 units. And I want to reiterate, they haven't done this to every single condominium in Chicago. It's only if they put you on the list. Is every single condominium in Chicago asked to be on the list? They have the opportunity to. Well, yeah, but has it? I doubt it. No, no, as far as I know, no. So my condo being on the list isn't for some general public interest that applies to the whole city, like you have when there's a zoning ordinance, like for example, New York and San Francisco. And so just basically leaving me on the list indefinitely until I can convince the court otherwise, I do consider that a taking. Let me ask you this. If you went to your condo board meeting, and you started a petition with all the residents, and many of the residents agreed with you, our building should not be on this list. And therefore you asked the HOA to take a vote, the board, and to remove themselves from the city's list. Is that a possibility? The HOA could decide just as it decided to get on the list, it could decide to get off the list. Is my understanding incorrect? It's within those bylaws that is in the record. And I believe it takes the vote of 20% to actually bring that type of vote. And then once we have a vote, you need a majority of the homeowners. Have you tried to do this? No, I mean, I don't know that there's overwhelming interest to do it. This gets back to injury. Is the HOA board capable of removing the injury by getting off the list through this process? Whether it's difficult or not is another question. But is it possible? Yes, I guess they could notify the city. In the same regard, the city could just disregard their affidavit and follow what's in the affidavit and remove it themselves. That's a hypothetical injury. Well, I think the injury is, you know, I only talked about rents. My building in the complaint, I said it's worth, my condo is $270,000. I mean, it's, I'm not going on much of a leap to say that if I could get double the rent, it's worth a lot more, especially in this economy. Who's preventing, and that's what we're trying to articulate, is what's preventing Unit 307 from being on Airbnb? From, I cannot even advertise it on the short-term rental. Because the declaration and the homeowners association asking the city to place the condominium on the list of prohibited buildings? No, I think it's the actual placement of the list. Is the HOA blame to blame too? Yes, but the actual city putting it on the, you know, the prohibited building list, I can't do anything except seek recourse in the courts. Would the city have put your building on the list had the HOA not asked? Unlikely that that's, you know, I think also hypothetical, but the fact of the matter is it is on there, and I don't believe it belongs on there, and then even if the court disagreed with me on the daily, I can't even put it on there for the monthly or annual, which is a tremendous marketplace, you know, by itself. Okay, I want you to save some time, all right, for your rebuttal. Yes, yes, I can stop here. Thank you. Okay, thank you very much. Hey, Ms. Weiss. Hello, Ms. Weiss. Good morning. May it please the court, this case concerns the city's shared housing ordinance, which preserves affordable housing and protects the quality of life in residential buildings and neighborhoods. The district court properly dismissed plaintiff's two reasons. First, plaintiff lacks standing because his condo board prohibits short-term rentals. Let me stop you there, then, because the ordinance imposes penalties in the form of daily fines that are unrelated to any penalties that the homeowners association would impose. Why shouldn't the prospect of those significant fines constitute an injury that would be sufficient to protect the quality of life in residential buildings and neighborhoods? And second, plaintiff lacks standing because his condo board prohibits short-term rentals. Let me stop you there, then, because the ordinance imposes penalties in the form of daily fines that are unrelated to any penalties that the homeowners association would impose. Why shouldn't the  of the complaint and the injury alleged there, the injuries are the decrease in property value and the loss of future profitability. In addition... If he had alleged independently that the fines were also an injury, would your answer still be the same? Your Honor, first of all, that matter is not before the court, so the court doesn't need to decide that today. But second of all, there is no evidence that plaintiff would violate the declaration of his condo board in order to incur those fines. He hasn't alleged in the second amended complaint that he would violate the declaration, and so there's nothing to indicate that he would be fined. And second, plaintiff cannot establish that a regular... This ordinance was in place. This woman was renting short-term rentals before and at no point did the housing association impose any type of fine or restriction against them. The injury didn't occur until after the city put the building on the prohibited list. Yes, Your Honor. So two points in response to that. First, looking at the declaration, as the court is permitted to do, I believe that came up earlier as a question. The court is permitted to consider documents that are referenced in the pleadings, and therefore, there's nothing stopping the court from considering the contents of the declaration here. That declaration does say that short-term rentals are not permitted, and also it says that no failure to enforce the terms of the declaration results in waiver of the board's ability to do so. So just because they haven't enforced the declaration in the past doesn't mean that they would not do so in the future, which, as Your Honor pointed out earlier, makes this a hypothetical injury. Well, you mentioned us looking at the text of the declaration. Really, should we do that or should we remand to the district court? So, Your Honor, this court has held in Williamson v. Coran that a written instrument attached to a complaint becomes part of that pleading so that a court can consider the contents of that document in ruling on a motion to dismiss. So it's absolutely appropriate for this court to tell me this. Is there any difference at all between the analysis that is appropriate to the takings clause claim and that for the inverse condemnation claim? No, Your Honor. For these purposes, because damage to property has not been alleged and it's only a taking being alleged, those two claims are in the same way. You want to continue wherever you were going before you were so rudely interrupted? Absolutely, Your Honor. Thank you. So to briefly address standing, as we've discussed, plaintiff alleges that— By me, by the way. Let me just make that clear. No, not at all. Plaintiff alleges that placing his building on the prohibited building list constituted a regulatory taking and inverse condemnation, but he has no standing to bring these claims. Even if he alleged sufficiently a threat of prosecution claim? Your Honor, because the condo board independently prohibits short-term rentals, and again, there's no allegation that he would violate the declaration in the future, he did not sufficiently allege enough to establish standing. A threat of prosecution. Has the city enforced this ordinance before? Against Mr. Mogan? No. Against anyone who is—the fines and the fees that Judge Robner articulated—has the city enforced this before? Yes, Your Honor. And so my question is, has he not sufficiently alleged a substantial threat of He has not sufficiently alleged a threat of prosecution because he has not alleged that he would violate this declaration, which itself prohibits him from conducting short-term rentals. So in order to conduct short-term rentals and therefore be prosecuted for violation of this ordinance— But the district court found that he alleged, but for the ordinance, he would list his property on Airbnb. Yes, Your Honor. The district court found that based on a a reading of the declaration that seems to be incorrect. The district court seemed to take Mr. Mogan's interpretation of the declaration at face value. In other words, that it's not a prohibition on two separate categories of leases, rather it's a prohibition on short-term rentals where hotel services are offered. And for that reason, that was the reason for the court's decision there. Well, Mr. Mogan could be, based on the complaint, alleging two different things. One, my declaration doesn't bar me from listing, but for the city ordinance, I would list my unit. Also, even if my declaration bars it, my homeowners association has never done anything about it. It's never threatened anybody, stopped anybody. It's not a true threat, so I would list it, but for the city ordinance. I think we've got both allegations there. So how do you conclude that he has not made an allegation? Your Honor, that could be a fair reading of those allegations, in which case Mr. Mogan's claim still fails on the merits, and I'm happy to turn to the Penn Central factors. Go ahead. This court may alternatively affirm the district court's ruling based on the fact that plaintiff has failed to allege enough to support a regulatory taking or inverse condemnation claim. For purposes of this case, as we've discussed, both claims are analyzed under the same framework. The plaintiff must demonstrate that the ordinance constituted a taking based on the Penn Central factors, and I'll discuss each factor in turn. Looking at the first Penn Central factor, plaintiff's allegations do not show a severe economic impact. Plaintiff claims that he would be able to make more money by renting his unit through online home sharing platforms, but the Supreme Court has recognized that merely preventing the most profitable use of property does not amount to a taking, and plaintiff does not dispute that he can still derive an economic benefit from his property. He can use it as a residence, rent it long term, or sell it. These are all economically beneficial uses of a property which will defeat a takings claim. Turning to the second Penn Central factor, plaintiff cannot show that the ordinance interfered with any reasonable investment-backed expectations. First, platforms such as Airbnb did not exist when Mogan first purchased his condo in 2004. He could not have relied on his ability to use these platforms when he made the investment. Moreover, plaintiff purchased his unit despite the fact that his building's declaration prohibited short-term rentals. This shows that plaintiff could not have reasonably expected to be able to rent out his condo on a short-term basis. And regardless of these facts, the Supreme Court has recognized that property owners must expect the uses of their property to be restricted from time to time by legitimate exercises of government powers. The City has a long history of regulating land use and zoning. It is not reasonable to expect that such regulations will never have an impact on a particular business, even where they have not impacted that business before. And you know, I doubt that this is, I doubt that this is part of the record, although it could be. Have you any idea of the percentage of condominium buildings that have asked to be placed on the City's list? Your Honor, I don't. I don't believe the percentage of buildings that have asked to be placed on this list is in the complaint. I'm happy to find out if the Court would like me to. I'm just wondering about it, that's all. But if it's not in the record, it's not in the record. Okay, sorry. Go ahead. And turning to the third Penn Central factor, the character of the City's action does not demonstrate it taking care. Do we mind backing up just for a moment? I think it's, he only makes $1,600 now a month now versus $3,600 that he was making. Is that not a sufficient economic impact for purposes of the 10-kids claim? Your Honor, I believe that he alleges that other condos in the area can make as much as $3,200 or $3,600. He never alleges that in the past when he's rented out his unit he was able to make that much, so that kind of profitability is pure speculation at this point. And even so, simply prohibiting the most beneficial use of property is not sufficient to constitute a taking. So even if he were able to collect $3,600 a month as opposed to $1,600 a month from long-term rentals, that wouldn't be sufficient, no. Returning to the character of the government's action. Well, I want to back up to another factor, the investment-backed expectations. What's the point at which we should evaluate that or we were permitted to evaluate that? You suggest that just now we need to look at in 2004 when he bought the place and Airbnb didn't exist, but what's to say that investment-backed expectations don't shift over time? And now we are in 2023. Right. Your Honor, looking at the case on this factor, it seems to be that the expectation should be judged at the time the investment was made. So, for instance, in Necrolaw v. City of Jersey City, which is a Third Circuit case from 2022 addressing short-term rentals such as this, the expectation was judged at the time that the investments were made in that case. So here you can look at the date that Mr. Morgan purchased his condo in 2004 or the date that he made subsequent renovations to his condo. I believe he alleges that he carpeted the unit and purchased furniture, but it's not clear that doing so was based on a reasonable reliance that he would be able to—excuse me, that the city would never regulate short-term rentals. So turning to the character of the governmental action, according to Penn Central, a regulation which promotes the common good weighs against a finding that a taking has occurred, and a regulation that restricts permissible uses of residential housing in order to protect the residential housing market, promote public safety, and reduce nuisance behavior associated with short-term rentals is not the sort of government action that qualifies as a taking. In any event, the effect to the shared housing unit—excuse me, the shared housing ordinance is indirect and limited here. It does not apply directly to plaintiff's building. Rather, it only restricts short-term rentals in the building because the condo board independently decided to bar such rentals. The board could change its declaration, which would permit the building to be taken off of the prohibited buildings list. Furthermore, the ordinance does not prohibit plaintiff from renting his unit for periods of more than 30 days, and given the limited effect of this regulation, the character of the city's action does not weigh in favor of a taking. For these reasons, we ask this court to affirm the ruling of the district court dismissing plaintiff's complaint. Thank you. Thank you very much, Ms. Weiss. Mr. Mogan, come on back up. You asked for three minutes. You have a minute 39, but I'm going to give you your full three. Okay. Thank you. I appreciate that. A few things. Actually, since Chicago became a city 179 years before I filed the complaint, they didn't regulate anything. They started—as I recall—in 2012, then they enacted the ordinance. My colleague at the city mentions that Airbnb didn't exist in 2016. Without going deep into the record, there is a website— No, no, no. I think she said it didn't exist when you purchased, I believe, which was 2004? Correct. Right. She didn't say 2016. So, I mean, it's common knowledge there's a website called Craigslist that has rentals on there, so Airbnb wasn't the only internet website that allowed short-term rentals. Again, this is something more in tune with—should be worked on discovery. I did make improvements to the property after the fact specifically so I could run it on Airbnb or any website. But not necessarily Airbnb because it wasn't in place at the time that you purchased the rental in 2004, right? Correct. So you didn't buy that condo so that it can go on Airbnb? That's an overstatement. That's specifically on Airbnb, no. I'm saying facts can exist that I've used other vehicles besides, and I intended to, essentially. I'd rent it on a 12-hour basis if I could just to try to make money, honestly. And as far as, yeah, the record's clear. Airbnb didn't exist going back to 2004. Did you say you would rent it on a 12-hour basis? I mean, there's people that travel. If someone pays me enough money, you can do that on Airbnb nowadays. You know, usually the shortest is, well, 24 hours if someone wants to use it for 12 and get out of there. But I do have enough experience with that entity and, you know, if someone just wants it for a short time and they check out, you're free to put it back on, you know, for that same night. That's what I was getting at. It's not clear from the complaint, but what is the property interest you're asserting? Um, so in the condo, I mean, I'm a shareholder of the HOA, I own my specific condo. I have a property interest in forward-looking rights to rent it. I think that it's different in this case than all the short-term rental case across the country is, I've owned it so long and I've actually owned it before the ordinance came into effect. And so I don't know how you'd deem something a privilege because you pass a law that I deem it was always property interest. And I don't want to go over especially since you were kind enough to grant me extra time and thank you everyone. You're very welcome and I thank you and I thank Ms. Weiss and the case will be taken under advisement.